Argued October 2, reversed November 26, 1973

DAVIS, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND (No. 382-488),
*Appellant.*
515 P2d 1333

*Al J. Laue,* Assistant Attorney General, Salem,

argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Raymond J. Conboy,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison and Dan O'Leary, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

This is an appeal by the State Accident Insurance Fund from an order of the circuit court reversing both the Workmen's Compensation Board and the hearing officer's determination that the respondent's injuries did not arise out of and in the course of her employment.

The facts are undisputed and indeed were stipulated to by the parties. No other testimony was received before either the hearing officer or the circuit court.

Respondent was employed by the St. Martin Extension Care Center as a nurses' aide, five days a week from 6:30 a.m. to 3 p.m. On October 15, 1971, the appellant, State Accident Insurance Fund, sponsored and conducted a safety meeting at the place where respondent worked. It was originally contemplated the meeting would start at 2 p.m. and end at 4 p.m. Respondent was instructed, with other employes, to attend the class which concluded in time for her to "punch out" at 3:43 p.m. In addition to her regular pay for the day, she received overtime pay for the 45 minutes from 3 p.m. to 3:45 p.m. She received no travel time, nor does she claim any. Ordinarily, she utilized public

transportation in traveling between her residence and her place of employment. A bus regularly stopped across the street from her place of employment at 3:05 p.m. At that time of day, on that route, the buses ran at half-hour intervals. Thus, respondent missed the 3:35 p.m. bus. The next bus was not due until 4:05 p.m. Respondent accepted a ride with a fellow employe and was injured in an automobile accident which occurred on the route she would have been on had she taken the bus. Following the accident, she completed her journey home by bus.

Appellant asserts the trial court erred in reversing the Workmen's Compensation Board and hearing officer when it determined that the respondent's injuries arose out of the course of her employment. We agree.

As stated in *Fenn v. Parker Construction Co.,* 6 Or App 412, 415, 487 P2d 894 (1971):

> "The generally recognized rule of workmen's compensation law known as the 'going and coming rule' is that in the absence of special circumstances an employe injured while going to or coming from his place of work is excluded from the benefits of the compensation acts. 2 Will L J 75 (1962); *Willis v. State Acc. Ins. Fund,* 3 Or App 565, 475 P2d 986 (1970); *White v. S.I.A.C.,* 236 Or 444, 447, 389 P2d 310 (1964); 8 Schneider, Workmen's Compensation Text 3, § 1710 (3d Ed 1951)."

Respondent contends and the trial court concluded that the "special task" exception to the "going and coming rule" is applicable here.

Respondent relies, as did the circuit court, on *Binet v. Ocean Gate Board of Education,* 90 NJ Super 571, 218 A2d 869 (1966); *Dawson v. Oklahoma City Casket Company,* 322 P2d 642 (Okla 1958); and *Cav-*

*ness v. Industrial Commission,* 74 Ariz 27, 243 P2d 459 (1952).

In her brief, she points out:

"* * * Some authorities, cited above, would hold that the claimant was within the course and scope of her employment under such circumstances. Other cases apparently would not. * * *"

Here there was no special errand necessitating an additional journey. The mode of travel homeward was selected by the employe, unlike *Casper v. SAIF,* 13 Or App 464, 511 P2d 451 (1973), where it was for the convenience of and at the express direction of the employer that the employe traveled to lunch on his own motorcycle.

There is no claim here that respondent in fact or by contract was compensated in whole or in part for travel time as in *Fenn v. Parker Construction Co.,* supra, and *Livingston v. State Ind. Acc. Com.,* 200 Or 468, 266 P2d 684 (1954).

In *Casper* we said:

"The quotation from Corpus Juris in *Munson v. State Ind. Acc. Comm.,* 142 Or 252, 256, 20 P2d 229 (1933), is still apropos of cases such as this:

" ' " 'In determining whether an accident arose out of and in the course of the employment, each case must be decided with reference to its own attendant circumstances, and it has indeed been stated rather broadly, but by eminent authority that argument by analogy is valueless.' Corpus Juris, (W.C.) p. 73". 1 Schneider, Workmen's Compensation Law (2d ed.), p. 741, § 262.'

In *Munson* it is made clear that the fact the employe is injured during unpaid time does not, in itself, defeat coverage. Important to the decision was that '[a]t the time of the injury, he was engaged in forwarding and facilitating his master's business * * *.' " 13 Or App at 470-71. (Brackets theirs.)

Here respondent was attending a safety training session, conducted by appellant on the employer's premises and designed to minimize the possibility of employes sustaining on-the-job injuries. The performance of no special errand or task unrelated to her regular duties was here shown to be involved. Each of the cases relied upon by claimant involved a situation where the court concluded that the workman was involved in a special task or errand, not a normal part of the claimant's work. The safety course was begun during her regular working hours and for its complettion required her to work 43 minutes overtime, for which she was duly compensated.

1 Larson, Workmen's Compensation Law, 4-97, 4-98, Journey Itself Part of Service § 16.12, states in his treatise that:

"* * * It has sometimes been argued that if an employee works beyond his regular hours at the request of the employer, he comes within the special errand rule while making his regular trip homeward. This ignores the basis of the rule pointed out above. There is nothing in working two hours longer in the evening which increases the relative importance of the journey to and from work as part of the employment. Accordingly the special errand rule is ordinarily held inapplicable when the only special component is the fact that the employee began work earlier or quit work later than usual. * * *"

However, *Larson* qualifies this by stating:

"If the overtime work extended so far into the night as to transform the journey home into a substantially more inconvenient or hazardous trip, a case might be made out for invoking the special errand rule. By the same token, when a worker who normally started work at 8:00 a.m. was directed by his employer to appear at 4:00 a.m. to help clear a

storage place in order to allow the day shift to operate a machine, the Oklahoma court quite properly awarded compensation for an accident on the way to work at 3:30 a.m. The added onerousness of this trip is obvious. On the other hand, coming to work only 25 minutes early does not so transform the character of the journey. * * *" 1 Larson at 4-99, 4-100.

■ We agree with *Larson* that under circumstances similar to these here involved, there must be something about the overtime task which substantially increases or creates risk of injury which a claimant normally bears going and coming from work during her regular working hours. *See Montgomery v. State Ind. Acc. Com.*, 224 Or 380, 389, 393-94, 356 P2d 524 (1960).

■ Here respondent worked 43 minutes overtime. It was still afternoon and the public buses upon which she normally traveled were running at the regular, daily, half-hour intervals. Nothing in connection with her overtime work or her employment significantly altered the normal risk attendant upon her journey home.

Accordingly, we conclude that the risks to respondent of going home after working overtime were not significantly different than if she had "punched out" at the usual hour of 3 p.m.

We think her trip home under the circumstances cannot be considered as being within the claimed exception to the "going and coming rule." To hold otherwise would be to ignore the purpose of the "going and coming rule" itself.

Reversed.