Argued April 23, reversed May 12, 1975

GUMBRECHT, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND, *Appellant.*

534 P2d 1189

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Dan O'Leary,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison, Portland.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

SCHWAB, C. J.

The State Accident Insurance Fund appeals from a decision of the circuit court holding that claimant's injury in this case is compensable. The circuit court decision reversed an order of the Workmen's Compensation Board. The sole issue in this case is whether claimant's injury arose "* * * out of and in the course of [her] employment" as required for compensation under ORS 656.002(7)(a).[1]

The facts are stipulated. On June 14, 1973, claimant was employed at The Psychology Center in Portland, a business which performs psychological testing and evaluation. It has been a long-continued practice at The Psychology Center, supported and encouraged by the management, to celebrate the birthday of each employe. This celebration normally consists of

---

[1] "A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means." ORS 656.002(7)(a).

a lunch purchased by Dr. Hickman, the director of the Center, and a later celebration with cake, coffee and presents.

It was stipulated that Elaine Hubble, claimant's supervisor, would testify that since these birthday parties were a practice which the management consciously supported and encouraged, she would have felt it her responsibility to take care of the arrangements if no one volunteered to do so. It was also stipulated that Dr. Hickman would testify that he knew of the practice of celebrating his employes' birthdays and encouraged this practice because it served to raise the morale of his employes.

Claimant usually traveled to and from work by bus. On June 14, 1973, she took her normal bus home from work, but stopped at a shopping center in Tigard to purchase some items needed for a co-worker's birthday party the next day. She spent approximately ten minutes purchasing paper plates, napkins, ribbon and wrapping paper. These items were all put into one sack, probably weighing no more than one or two pounds. She then boarded another bus to continue her journey home. This bus followed the same route that claimant normally traveled to get home from work. Claimant got off the bus across the street from her apartment, still carrying the sack with the items she had purchased. While crossing the street to reach her apartment, claimant fell and broke her left elbow. This accident occurred at approximately 6:20 p.m. Had she not stopped to purchase the items for the office party, claimant would probably have arrived home as usual at about 5:55 p.m.

Claimant's attorney stipulated that "* * * [W]e're not claiming the package in her hands enhanced the risk, or caused her to fall, or caused her injury in anyway [sic]."

■ The general rule in cases where a claimant is injured on the way home from work is:

"* * * [I]njuries sustained by employees when going to and coming from their regular place of work are not deemed to arise out of and in the course of their employment. * * *" *Philpott v. State Ind. Acc. Com.*, 234 Or 37, 40, 379 P2d 1010 (1963).

*See also, Fenn v. Parker Construction Co.*, 6 Or App 412, 487 P2d 894 (1971); 1 Larson, Workmen's Compensation Law 4-2-4-3, §§ 15.00, 15.11.

There are exceptions to this rule. One exception, which claimant argues is applicable in this case is the so-called "dual-purposes" rule. This rule was applied in *Rosencrantz v. Insurance Service,* 2 Or App 225, 467 P2d 664 (1970), where this court said:

"* * * Of course, a trip that is purely personal does not arise out of and in the course of employment. However, if the trip is one of dual purpose, both business and personal, then the injury may arise out of and in the course of employment under certain circumstances. 1 Larson, Workmen's Compensation Law 294.3, § 18.00 (1968), states the test this way:

" 'Injury during a trip which serves both a business and a personal purpose is within the course of employment if the trip involves the performance of a service for the employer which would have caused the trip to be taken by someone even if it had not coincided with the personal journey * * *.'

Larson goes on to say in § 18.12 at 294.5–294.10:

" 'The basic dual-purpose rule, accepted by the great majority of jurisdictions, may be summarized as follows: when a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business pur-

pose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone; it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey.'" 2 Or App at 227-28.

Larson specifically deals with the issue of employes who perform services for their employer while on their way to or from work:

"* * * In all such cases, we start with a personal motive—that of getting home—which would have caused the employee to take the trip in any case. The question then becomes: was the business mission of such character or importance that it would have necessitated a trip by someone if this employee had not been able to handle it in combination with his homeward journey?

"In some cases it has been possible to answer this question 'yes,' with the result that while covering his usual route toward his home the employee has been deemed, for this particular occasion, to remain in the course of his employment." 1 Larson, supra, 4-169–4-170, § 18.21.

This rule was followed in *Munson v. State Ind. Acc. Comm.*, 142 Or 252, 20 P2d 229 (1933). In that case the claimant was driving from his place of work to his home. He was on his normal route home but planned to make a stop to deliver reports to the office of his supervisor. Before reaching the supervisor's office, claimant was killed in an automobile accident. The Supreme Court held that the injury was compensable even though claimant was killed on his normal route home.

"There can be no question that making the report and delivering it arose out of and in the course

of his employment, and when he delivered it personally and in the same manner all through his employment his employer adopted and ratified the mode of delivery * * *.

"At the time of the injury, he was engaged in forwarding and facilitating his master's business * * *." 142 Or at 260.

Here the dual-purpose trip had been completed at the time of claimant's injury. She was on a purely personal venture—her trip home. It is stipulated that the package which she was carrying in no way enhanced the risk involved in the trip.

Larson states the rule in this situation as follows:

"Of course, in a one-way journey, if the accident had happened after the business call had been made and while claimant was on the final leg of his journey home, the injury would be clearly noncompensable * * *.

"* * * * *

"An example of this situation, which may be described as a concurrent-service trip in which the business mission has been completed, is that of a man who was given some reports to deliver at a store on his way home. After delivering the reports, and while on his way home from the store, he was accidentally killed. Compensation was denied [Jinks v. Burton Sutton Oil Co., 44 So2d 343 (La App 1950)]." 1 Larson, supra, 4-220–4-221, § 19.24.

The only difference between the final part of claimant's trip home on the day of her injury and any other day was that (1) she was carrying a package, and (2) she was later than usual. Neither of these factors was causally related to claimant's injury.

■ In *King v. Ind. Acc. Com.*, 211 Or 40, 84, 309 P2d 159, 315 P2d 148, 318 P2d 272 (1957), the Su-

preme Court quoted from 1 Larson, Workmen's Compensation Law 4-177, § 18.24:

> " 'The mere fact that claimant is, while going to work, also carrying with him some of the paraphernalia of his employment does not, in itself, convert the trip into a part of the employment.' "

*See also, Philpott v. State Ind. Acc. Com.,* supra. Also, in *Davis v. SAIF,* 15 Or App 405, 515 P2d 1333 (1973), it was held that the fact that a claimant is traveling home at a later time than usual, due to a work-related reason, does not by itself make an injury on the way home "arise out of and in the course of" the employment. The court in *Davis* relied on the following factors: (1) the delay did not "substantially increase[s] or create[s] risk of injury which a claimant normally bears going and coming from work during her regular working hours," 15 Or App at 410; (2) the mode of travel was selected by the employe, unlike *Casper v. SAIF,* 13 Or App 464, 511 P2d 451 (1973); and (3) claimant was not compensated for her travel time. All of these factors are present in the case before us. The fact that at some earlier time in her journey claimant may have been performing a task for her employer did not change the nature of her journey home after the task was accomplished.

We hold that claimant's injury does not fall within any exception to the "going and coming" rule and is therefore noncompensable because it did not "arise out of and in the course of" her employment.

Reversed.