Argued and submitted February 12, affirmed December 19, 1990

Sandra L. HICKEY,
Personal Representative of the Estate
of Danny Michael Hickey, deceased,
*Appellant,*

*v.*

UNION PACIFIC RAILROAD COMPANY,
Umatilla County, Oregon, City of Hermiston,
and Public Utility Commissioner of the State of Oregon,
*Respondents,*

*and*

James E. DELP, Jr.,
dba Frank's Sewer Service,
*Defendant.*

(CV87-908; CA A51046)

803 P2d 275

Garry L. Reynolds, Hermiston, argued the cause and filed the briefs for appellant.

Thomas W. Brown, Portland, argued the cause for respondent Union Pacific Railroad Company. With him on the brief was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

I. Franklin Hunsaker, Portland, argued the cause for respondents Umatilla County and City of Hermiston. With him on the brief were Douglas R. Andres, Lisa E. Lear and Bullivant, Houser, Bailey Pendergrass & Hoffman, Portland.

Jas Adams, Assistant Attorney General, Salem, argued the cause for respondent Public Utility Commissioner of the State of Oregon. With him on the brief were Dave Frohnmayer, Attorney General and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

### DEITS, J.

Plaintiff, as personal representative of the estate of her husband (decedent), seeks damages for his death against City of Hermiston (city), Umatilla County (county), the Public Utility Commissioner (PUC), Union Pacific Railroad (railroad) and James Delp.[1] The trial court dismissed with prejudice the claims against city, county and PUC on the ground that those defendants are immune from liability under ORS 30.265(3)(a), because the death was compensable under the Workers' Compensation Law. Plaintiff's claims against railroad were tried to a jury, which returned a verdict for railroad. Plaintiff appeals the dismissal of her claims against the public entities; she also appeals the judgment in favor of railroad, arguing that the trial court erred in allowing evidence of PUC surveys and data. We affirm.

Decedent was employed as a warehouse foreman for the Church of Jesus Christ of Latter-day Saints. His scheduled work day was from 7:30 a.m. to 5 p.m. There were no scheduled swing, graveyard or weekend shifts at the warehouse. During his 10 months on the job, decedent had occasionally stayed late in order to complete his work. His wife testified that, on a few occasions, he had gone back to work after returning home. However, his supervisor had instructed him to do his work during regular hours whenever possible. While his supervisor was out of town, decedent had the authority to decide when it was necessary to work outside his regular hours. He usually drove across the South First Street railroad crossing on his way to and from work. Two trains regularly passed the crossing each day: one going north between 8 p.m. and 9:30 p.m. and one going south between 11 p.m. and 12:30 a.m.

On August 27, 1986, decedent worked his regular hours. He was supposed to have loaded a truck that had to leave at 4:00 the next morning. However, the driver arrived late and the truck was not ready to be loaded until 5 or 5:30 p.m. Decedent's supervisor was out of town, and he decided to go to a church meeting that he and his wife had planned on attending and then return to load the truck. He returned to work around 11 p.m. He completed the job and started home

---

[1] On plaintiff's motion, the claim against Delp was dismissed before trial.

on his motorcycle along his usual route. At approximately midnight, his motorcycle collided with the south bound train at the First Street crossing, and he was killed.

■       Plaintiff argues that the trial court erred in concluding that decedent's death was compensable under the Workers' Compensation Law and that, therefore, defendants city, county and PUC were immune from liability under ORS 30.265(3)(a).[2] We conclude that the death was compensable and that, accordingly, defendants city, county and PUC are immune.

A compensable injury or death is one "arising out of and in the course of employment." ORS 656.005(7)(a). As a general rule, injuries sustained by an employee going to or coming from work are not compensable under the Workers' Compensation Law. *Hendrickson v. Lewis,* 94 Or App 5, 8, 764 P2d 577 (1988). However, there is an exception to the "going and coming" rule if an injury or death occurs while an employee is on a "special errand" for the employer. *Philpott v. State Ind. Acc. Com.,* 234 Or 37, 41, 379 P2d 1010 (1963). This exception is explained by Larson:

> "When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself." 1 Larson, *Workmen's Compensation Law* 4-204, § 16.10 (1985). (Footnotes omitted.)

In *Davis v. SAIF,* 15 Or App 405, 515 P2d 1333 (1973), we discussed the application of the "special errand" exception. The claimant was injured in an auto accident on her way home after an office meeting that had required her to

---

[2] ORS 30.265(3)(a) provides:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties, or while operating a motor vehicle in a ridesharing arrangement authorized under ORS 276.598, are immune from liability for:

"Any claim for injury to or death of any person covered by any workers' compensation law."

work 43 minutes past her scheduled shift. We concluded that, generally, staying late or coming early to work does not take a claimant's regular commuting outside the general rule that it is not within the course and scope of employment for purposes of Workers' Compensation coverage. We recognized, however, that, if the change in work schedule made the journey between home and work substantially more inconvenient or hazardous, the special errand rule might apply. We concluded in *Davis* that the rule was not applicable to the facts of that case:

> "Here [the claimant] worked 43 minutes overtime. It was still afternoon and the public buses upon which she normally traveled were running at the regular, daily, half-hour intervals. Nothing in connection with her overtime work or her employment significantly altered the normal risk attendant upon her journey home." 15 Or App at 410.

Here, decedent did not simply leave work late or go to work early. He made an extra, late night trip to work. In the absence of his supervisor, he was authorized to determine when it was necessary to work outside his normal hours. He made the extra trip because the truck needed to be loaded for its departure the next morning. Because of personal commitments, he could not stay overtime and complete the required work. The trial court found that decedent's return to work occurred during darkness and at the only hours during which a train would pass over the crossing and that those facts "substantially increased and created a risk of injury over and above that which decedent normally bore going to and from work during his regular work hours." We agree that the late night trip was more hazardous than his normal trip home.

Plaintiff contends that, because decedent was performing his "usual work," the loading and unloading of trucks, his activities could not come within the special errand exception. However, under the exception, the work being performed need not be different from that usually done by the claimant. As the court said in *Baroid v. Workers' Comp. Appeals Bd.,* 121 Cal App 3d 558, 175 Cal Rptr 633 (1981), in discussing situations where the special errand rule was applicable:

> "In all of the foregoing cases the common thread is that something about the location of the work, the nature of the work, or the hour the work was performed deviated from that which was the customary, fixed or usual norm." 121 Cal App 3d at 569.

Here, it was unusual for decedent to work outside his normal working hours, in particular, to make a trip back to work after returning home. His wife testified that she only remembered him returning to work on a few occasions. We conclude that decedent's return to work at the late hour was a deviation from his customary work.

■ Plaintiff also contends that decedent's activities did not fall within the special errand exception, because he could have unloaded the truck right after work; instead, because of personal commitments, he had to return late at night to complete the work. However, the fact that he did not make the journey at the time most convenient to his employer does not take his activities out of the special errand exception. When a claimant's activity benefits both the employer and the claimant, it may still come within the special errand exception, if the primary benefit is to the employer. *See Hendrickson v. Lewis, supra,* 94 Or App at 8; *Gumbrecht v. SAIF,* 21 Or App 389, 392-93, 534 P2d 1189 (1975). 1 Larson, *supra,* § 4-208.39. Even though decedent, for personal reasons, returned to work after his church meeting rather than staying late, the extra trip was a special errand in the course of his employment. The primary benefit was to the employer, who needed the work done. The requirement that decedent work after hours was extraordinary in relation to his routine duties. Because he had no advance notice, returning rather than staying late was necessary. *See Green v. Workers' Comp. Appeals Bd.,* 187 Cal App 3d 1421, 232 Cal Rptr 465 (1986). The necessity of completing the work during off-duty hours is what distinguishes this case from *Runyan v. Pickerd,* 86 Or App 542, 547, 740 P2d 209 (1987), where the employee voluntarily returned to his place of work after hours to do work that could have been, and generally was, done during regular working hours. We hold that, because of the added hazard, the deviation from normal working hours, the lack of advance notice and primary benefit to employer, decedent's trip home was within the special errand rule and his injury was compensable under the Workers' Compensation Law.

■ Plaintiff's second assignment of error is that the trial court erred in allowing railroad's witness, Riley, to testify about the likelihood of an accident at this crossing, using a diagnostic tool devised by PUC called "the Jaqua Formula."

Plaintiff argues that 23 USC § 409 prohibits the introduction of the formula in evidence.

23 USC § 409 proscribes evidence of

"surveys * * * or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of * * * railway-highway crossings, pursuant to sections 130 * * * and 152 of (Title 23) or for the purpose of developing any highway safety construction project which may be implemented utilizing Federal-aid highway funds * * *."

However, there is no indication in this record that the information used by Riley was compiled for any of the specific purposes covered by 23 USC § 409. He testified that the formula has been used by the state since 1968 to identify railroad crossings that are potentially dangerous and to rank each crossing on the basis of predicted accidents. He also testified that, according to the formula, the crossing ranked 500 to 600 out of approximately 1,500 crossings in the state. The data that he used in applying the formula was compiled by PUC in its routine periodic inspections of crossings and by Riley himself in preparing for his testimony. Accordingly, the trial court did not err in allowing Riley's testimony.

Affirmed.