**Phong TRAN, Appellant,**

**Emily Tran, Plaintiff,**

v.

**DAVE'S ELECTRIC COMPANY INC., Respondent,**

**Laura Hale, Defendant.**

**No. WD 71183.**

Missouri Court of Appeals, Western District.

Nov. 15, 2011.

---

Edward D. Robertson, Jr. and Mary D. Winter, Jefferson City, MO, and Brendan C. Buckley and James T. Thompson, Kansas City, MO, for appellant.

William J. Foland, Jr. and Cory L. Atkins, Kansas City, MO, for respondent.

Before: MARK D. PFEIFFER, P.J., and THOMAS H. NEWTON and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Phong Tran, the plaintiff below, appeals the trial court's denial of his motion for judgment notwithstanding the verdict ("JNOV") against defendant Dave's Electric Company ("the Company"), after a jury found for the Company on Tran's claim that the Company was vicariously liable for the negligence of its then-President. Because the undisputed facts establish as a matter of law that the Company's President was acting in the course and scope of her employment for the Company at the time of the automobile accident in which Tran was injured, we reverse and remand for entry of JNOV in Tran's favor.

## Factual Background

Tran was driving on Missouri Highway 291 in Cass County on January 27, 2004, when Laura Hale crossed onto his side of the road and struck his vehicle. Tran was injured in the accident. He filed suit against both Ms. Hale and the Company. At the time, Ms. Hale was the President and sole Director of the Company. The other officer of the Company was Ms. Hale's then-husband, David Hale.[1]

At trial, it was undisputed that at the time of the accident Ms. Hale was driving into the office from her home to meet with an auditor from the Company's workers compensation insurance carrier. It was also undisputed that, but for the workers compensation audit appointment, Ms. Hale would normally have worked from home on that day due to the inclement weather. Finally, the undisputed evidence establishes that Ms. Hale was unable to reschedule or cancel the auditor appointment on the morning of January 27, 2004, that she was the only Company employee in a position to meet with the auditor, and that she made the trip into the office because it was important to the Company's interests that the auditor not be abandoned at the Company's office.

---

1. Laura and David Hale had divorced prior to trial; Ms. Hale's employment with the Company terminated at the same time. David Hale was Vice President of the Company at the time of the accident, and its President at the time of trial.

The Company and Tran both moved for summary judgment on the vicarious liability issue prior to trial. Both the Company and Tran also moved for a directed verdict on the issue at the close of Tran's evidence at trial, and at the close of all of the evidence. The circuit court denied all of these motions. The court found that reasonable minds could differ as to whether Ms. Hale was acting within the course and scope of her employment at the time of the accident, and submitted the issue to the jury.

The jury returned a verdict finding Ms. Hale personally liable, and awarding Tran $1.4 million in compensatory damages for his injuries. The jury found in the Company's favor, however, on Tran's vicarious liability claim. Tran filed a timely JNOV motion, claiming that the trial court had erred in submitting the *respondeat superior* issue to the jury. The trial court· denied Tran's JNOV motion. This appeal follows.

## Standard of Review

"The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict." *All Am. Painting, LLC v. Fin. Solutions and Assocs., Inc.,* 315 S.W.3d 719, 723 (Mo. banc 2010) (citation omitted). In other words, "[a]s to denials of motions for judgment notwithstanding the verdict based on a conclusion of law, our review is *de novo*." *Horner v. FedEx Ground Package Sys. Inc.,* 258 S.W.3d 532, 535 (Mo. App. W.D.2008).

Parties bearing the burden of proof generally are not entitled to a directed verdict. However, the plaintiff is entitled to a directed verdict in the unusual situation where the defendant has admitted in its pleadings, by counsel, or *through the defendant's individual testimony* the basic facts of the plaintiff's case. In such instances, the plaintiff is entitled to a directed verdict because there is no question of fact remaining for the jury to decide.

*All Am. Painting,* 315 S.W.3d at 723 (emphasis added) (citing *Brandt v. Pelican,* 856 S.W.2d 658, 664 (Mo. banc 1993)). For the reasons explained below, we conclude that this case, like *All American Painting,* presents the "unusual situation" in which a JNOV in favor of plaintiff Tran was justified.

## Analysis

Tran asserts a single Point Relied On, contending that the trial court erred in denying his JNOV motion on the issue of the Company's *respondeat superior* liability. Tran maintains that the material, undisputed facts are that Ms. Hale was required under her duty to the corporation to go into work for an unavoidable task on a day on which she would not normally have done so. Tran asserts that the only interpretation of these facts is that Ms. Hale was on a "special errand" for the Company, meaning that she was acting in the course and scope of her employment for the Company at the time of the accident, even though she was traveling from her home to the Company's office at the time.

■ "Generally, an employer is not liable for damages under the doctrine of respondeat superior for injuries caused by an employee's negligent operation of a vehicle which occurred while that employee is going to or coming from work." *Tuttle v. Muenks,* 964 S.W.2d 514, 517 (Mo.App. W.D.1998) (citation omitted). The rationale for the "going and coming" rule appears to be that, in an everyday commute to and from work, the employee is fulfilling the employee's own personal purposes of preserving employment and earning com-

pensation by being available for work; in addition, the nature and extent of an employee's commute, and the risks the employee faces during that commute, are dictated by the employee's personal decisions as to where to reside and how and when to travel, and are unrelated to any particular feature of the work they perform at the employer's direction.[2]

■ There are several exceptions to this "going and coming" rule, however. Tran relies on one such exception—the "special errand" doctrine.

The "special errand" rule states that when an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself. Thus,

while the general rule is that accidents incurred while an employee is going to or coming from work are not compensable because they do not arise out of and in the course of employment, that rule is not applicable where the employee during that period performs a special task, service or errand in connection with his or her employment. Such circumstance might be better characterized as causing a trip made in performing such a special task to be a part of the employment.

*Custer v. Hartford Ins. Co.,* 174 S.W.3d 602, 614 (Mo.App. W.D.2005) (en banc) (citations and internal quotation marks omitted).[3]

Tran argues on appeal that "the special inconvenience ... of making [the journey] in the particular circumstances" justifies invocation of the "special errand" doctrine in this case. Prior Missouri cases addressing the "special errand" exception provide guiding principles. Thus, in *Custer,* an employee was injured on his drive home after participating in a golf tournament at the direction (if not the order) of his employer. 174 S.W.3d at 607, 614. Because

2. *See Custer v. Hartford Ins. Co.,* 174 S.W.3d 602, 611 (Mo.App. W.D.2005) (en banc) ("in most circumstances, a trip to or from one's place of work is merely an inevitable circumstance with which every employee is confronted and which ordinarily bears no immediate relation to the actual services to be performed") (citation and internal quotation marks omitted); *Logan v. Phillips,* 891 S.W.2d 542, 544 (Mo.App. E.D.1995) ("Ordinarily, getting to the place of work is a personal problem of the employee and not part of his services to his employer.") (citation omitted); *Davis v. McDonnell Douglas,* 868 S.W.2d 170, 171 (Mo.App. E.D.1994) ("The rationale behind this principle is that the employee going to and from work is subject only to the common risks shared by the general public and not to any risk causally related to employment.") (citation omitted).

3. Several of the cases cited in this opinion involve workers compensation claims assert-

ed by an injured employee against his or her employer. Our Supreme Court has held that "[t]he conceptual bases of workers' compensation programs and vicarious liability ... appear to be identical: compensation of the injured party at the expense of the party in the best position to distribute the loss. Workers' compensation laws thus accomplish for employees what the common law, through respondeat superior, accomplishes for plaintiffs generally." *Zueck v. Oppenheimer Gateway Props., Inc.,* 809 S.W.2d 384, 389 (Mo. banc 1991) (citation and internal quotation marks omitted). *See also Tuttle,* 964 S.W.2d at 518 (finding workers compensation cases "instructive" in applying an exception to the "going and coming" rule in a personal-injury case brought by a non-employee plaintiff); *Logan v. Phillips,* 891 S.W.2d 542, 544 (Mo. App. E.D.1995) (wrongful death case; relying on workers compensation cases applying "special errand" exception).

of the inconvenience of making an irregular trip solely for the sake of his employer, the trouble and time due to the distance of the golf course from the employee's home, and the hazard presented by the drive home "on a dark, rainy night," we found that the Labor and Industrial Commission had sufficient evidence to find that the employee was on a special errand at the time of his injury, and therefore entitled to workers compensation benefits. *Id.* at 614.

In contrast, we affirmed the Commission's finding that an employee was *not* on a "special errand" in *Hilton v. Pizza Hut,* 892 S.W.2d 625 (Mo.App. W.D.1994).[4] In that case, the employer told the employee on a Monday that she had to produce her original Social Security card by the coming Friday to confirm her eligibility for employment, or she would be terminated. *Id.* at 634. In response, the plaintiff drove in the middle of the night to another town in order to retrieve her card, and was injured in an accident en route. *Id.* However, while the plaintiff was undeniably travelling to retrieve the card in order to satisfy her supervisor's demand, we nonetheless found that she was not on a special errand because she had "made a personal choice to drive that evening when there were other options available." *Id.* We explained that, while the employer had given the employee an unequivocal directive, the employee retained the flexibility as to how, and when, to comply, including by taking the trip at another time, asking someone else to look for and mail her the card, or ordering a new card; the employee did not have to travel in the middle of the night in order to accomplish the employer's objective. *Id.* We stressed that "[t]here must be continuity of cause combined with conti-

nuity in time and space" between the employment and the injury in order for the "special errand" exception to apply. *Id.*

Similarly, we found the "special errand" exception to be inapplicable in *Logan v. Phillips,* 891 S.W.2d 542 (Mo.App. E.D. 1995), a personal-injury action. In *Logan,* the plaintiffs argued that a police officer was engaged in a "special errand" when traveling from home to court in the evening, after his regular day shift, in order to testify under subpoena. *Id.* at 544–45. In rejecting the application of the "special errand" doctrine, *Logan* emphasized that "[p]roviding testimony in court was a routine duty of City police officers. A duty-related trip made regularly in the course of duty is not a 'special errand.' " *Id.* at 545 (citation and internal quotation marks omitted).

Under these decisions, to qualify as a "special errand" a trip which would otherwise fall within the "going and coming" rule must be undertaken to serve the employer's purposes, at a time and in a manner dictated by those purposes; the trip must not be a routine portion of the employee's duties, and must subject the employee to special inconvenience, hazard, or urgency.

■ "Whether the factual circumstances warrant an imposition of vicarious liability is a question of law for the court when the material facts from which the issue is to be decided are undisputed and lead to only one reasonable conclusion." *Horner,* 258 S.W.3d at 537. Here, it is undisputed that Ms. Hale was not making the injury-causing trip as part of a regular commute to her workplace. To the contrary, both Laura and David Hale testified that Ms. Hale would not have made this trip to the

4. Overruled on other grounds, *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo.
banc 2003).

office in regular circumstances, but would instead have worked from home but for the special need to meet the auditor at the Company's offices. Indeed, in denying both parties' motions for directed verdict at the close of Tran's evidence, the trial court recognized that "Mrs. Hale didn't normally go into the office during inclement or bad weather," and "that both parties agreed that Mrs. Hale wouldn't have gone into the business office but for the audit." Both Laura and David Hale testified that she was the only Company representative capable of providing the auditor with the information necessary for the audit, and that it was important to the Company's business interests that the auditor be met by a Company representative at the appointed time. Ms. Hale testified that canceling the meeting and rescheduling was not an available option, because the auditor's phone number was at the office and unavailable to her; David Hale agreed in his testimony that Ms. Hale had no alternative means of advancing the Company's interests. Further, the Hales'

testimony indicates that while the roads were driveable on the morning of the accident, they were slick and required drivers to exercise heightened caution (circumstances which would normally have led Ms. Hale to remain at home).[5]

It is also clear from the evidence that working from home was an entirely satisfactory method for Ms. Hale to discharge her (other) employment-related responsibilities when the weather was inclement, and that she would have suffered no adverse employment consequences by working from home on that day. Therefore, her *personal* interest in maintaining her employment and earning compensation did not require the trip.

Thus, the evidence from the Company's own representatives establishes that Ms. Hale was required to make a specific journey, at a specific time and to a specific place, under potentially dangerous conditions, based solely on the needs of the Company, and as the sole available means of furthering the Company's interests.[6]

---

5. The Company argues that a JNOV was inappropriate because the evidence indicates that the audit had previously been rescheduled and could have been rescheduled again, and that, following Ms. Hale's accident, no audit was ultimately performed for the year in question, without any adverse effect on the Company's workers compensation insurance coverage. Ms. Hale testified, however, that on the morning in question she had no access to the phone numbers which would have permitted her to contact the auditor and cancel the audit. Further, both Laura and David Hale testified that, at the time, they believed it was important to the Company that Ms. Hale physically appear at the Company's offices on the morning of January 27, 2004. Thus, Ms. Hale testified that it "wouldn't be very responsible as a business owner" to fail to meet the auditor, and that, "I just knew I had to be there." For his part, David Hale testified that he did not dispute Ms. Hale's conclusion "that it was extremely important for Dave's Electric not to leave an insurance company's auditor out in the cold," and agreed that Ms.

Hale's "only option for the interest of the business of Dave's Electric was to meet that auditor." Given this testimony, it is irrelevant whether, in hindsight, Ms. Hale's trip was actually necessary. The business necessity of a journey, and the availability of other options to meet the employer's needs, must be determined from the perspective of the employer and employee at the time the trip was undertaken.

6. We recognize that, because she was no longer affiliated with the Company at the time of trial, Laura Hale's testimony may not constitute admissions of the Company. *See, e.g., Brenneke v. Dep't of Mo., Veterans of Foreign Wars*, 984 S.W.2d 134, 144–45 (Mo.App. W.D. 1998). The same cannot be said of David Hale, however. David Hale was the Company's Vice President at the time of the accident, and its President at the time of trial; his testimony on the relevant points therefore constituted admissions binding on the Company. *Bynote v. National Super Markets, Inc.*, 891 S.W.2d 117, 124 (Mo. banc 1995) ("a

Undertaking the trip was contrary to Ms. Hale's own personal concerns regarding the weather and the condition of the roads, and was unnecessary to her personal interest in maintaining her employment. These undisputed facts are sufficient to invoke the "special errand" exception.[7]

Although all of the material facts described above are undisputed, and derived from the testimony of the Company's principals, the Company argues that a JNOV is inappropriate because those facts, even if undisputed, are subject to more than one reasonable interpretation. We disagree. Here, the undisputed facts establish that Ms. Hale made an irregular, non-routine trip which was necessitated solely by the Company's interest, at a time and place dictated solely by those interests. Only one reasonable conclusion can be derived from these facts.

We recognize that, in other circumstances, Ms. Hale may have frequently and regularly driven from her home to the Company's office as a normal commute. That is not the reason she was driving there at the time of the accident, however; instead, she was traveling *on that day,* and *at that time,* due to a specific need of her employer. While Missouri decisions may not have addressed this precise situation, the leading workers compensation treatise, to which Missouri courts have frequently referred concerning such questions, provides a relevant example:

> [I]n *Kyle v. Green High Sch[ool],* [208 Iowa 1037, 226 N.W. 71 (Iowa 1929),] the deceased janitor usually worked from 5 A.M. until about 3:30 P.M., although his

---

person with executive capacity is generally an agent for the entity he or she serves and has broad authority to bind the principal by his or her statements"); *German v. Kansas City,* 512 S.W.2d 135, 145–46 (Mo. banc 1974). David Hale's testimony was, therefore, "the defendant's individual testimony" for purposes of determining whether a directed verdict or JNOV was proper. *All Am. Painting,* 315 S.W.3d at 723. As explained in the text, his testimony establishes "the basic facts of the plaintiff's case" on the vicarious liability issue, *id.,* justifying the entry of a directed verdict and, after trial, a JNOV.

7. We note that *Hilton* also states that, for the "special errand" exception to apply, *"the employer must direct the employee to do a specific task at a particular time* and the accident or injury must occur while the employee is on that 'special errand' for the employer." 892 S.W.2d at 634 (emphasis added). Here, Ms. Hale was the Company's President and sole director, and was in charge of her own schedule. The undisputed evidence does not establish that anyone *else,* such as her then-husband, directed her to travel to the office to meet the workers compensation auditor on January 27, 2004. To the extent an employer direction is otherwise required to invoke the "special errand" exception, that requirement is inapplicable where, as here, the employee

at issue is the employing entity's chief executive, with no superiors within the entity, and has been given discretion as to the manner in which she discharges her responsibilities to the entity. *See, e.g., Hickey v. Union Pac. R.R. Co.,* 104 Or.App. 724, 803 P.2d 275, 277 (1990) ("special errand" exception applied where, in the absence of supervisor, employee "had the authority to decide when it was necessary to work outside his regular hours"); *Johnson v. Fairbanks Clinic,* 647 P.2d 592, 595 (Alaska 1982) (physician, who traveled to hospital on weekend for pre-surgery consultation with patient, was acting at the "implied request" of employer where, in physician's professional judgment, "it was necessary for him to visit the patient that day so that the surgery could be performed on Monday"); *In re Papanastassiou's Case,* 362 Mass. 91, 284 N.E.2d 598, 600–01 (1972) ("special errand" exception applied where research chemist determined, in the exercise of professional judgment, that an evening trip to monitor ongoing experiment was necessary). As explained in the text, the fact that Ms. Hale was on a "special errand" is established here by the fact that her personal purposes would have been satisfied by working from home on the date in question, and that she traveled into the office at a specific time based solely on her assessment that the business needs of the Company necessitated the trip.

424

hours of work were not definitely fixed. On the evening of the fatal accident, he received a call at his home asking him to come to the school to turn on the lights for a basketball game, since something seemed to be wrong with them. On his way he was struck in the street by an automobile. Compensation was awarded. Note that in this case the duty performed was, in one sense, a normal one for the janitor; yet *the essence of the service performed in the special journey was the making of the trip itself at a time when the janitor usually remained home.*

1 Arthur Larson & Lex Larson, LARSON'S WORKERS' COMPENSATION § 14.05[1], at 14–6 (2001) (footnotes omitted). Numerous cases from other jurisdictions hold that, despite the "going and coming" rule, a trip taken to the workplace outside of regular work hours, in order to satisfy a particular, time-sensitive interest of the employer, constitutes a "special errand" falling within the course and scope of employment.[8]

More specifically, courts have found the "special errand" exception to be applicable when an employee travels to work *on a regularly scheduled workday,* but when

the employee would not normally have traveled to work on that day due to weather conditions. In this regard, *Junium v. A.L. Bazzini Co.,* 86 A.D.2d 690, 446 N.Y.S.2d 520 (1982), bears striking similarities to the present case. In *Junium,* an employee, a corporation's secretary, was informed on a weekday morning that he had to attend an Internal Revenue Service audit at the corporation's offices, because the corporation's vice president would be unable to attend due to "an unusually severe blizzard." *Id.* at 521. Attendance at the audit of either the vice president or corporate secretary was required. *Id.* The employee attempted to shovel the deep snow on his driveway to make the trip, but suffered a heart attack while doing so, and died. The court found that the employee's survivors were entitled to workers compensation benefits, because the circumstances justified application of the "special errand" exception to the "going and coming" rule. The court justified application of the "special errand" exception based on circumstances which also exist here:

Here, decedent attempted to comply with the special direction of his superior to attend a crucial audit appointment,

8. *See, e.g., Barnes v. Children's Hosp.,* 109 Md.App. 543, 675 A.2d 558, 566 (1996) (employee injured while traveling to work on a Saturday, which was not a regularly scheduled workday, in response to employer page concerning computer difficulties); *Histed v. E.I. Du Pont de Nemours & Co.,* 621 A.2d 340, 345 (Del.1993) (employee injured during travel to work at 2:00 a.m., five hours before start of scheduled work shift, to respond to equipment breakdown which had halted plant operations); *Hickey v. Union Pac. R.R. Co.,* 104 Or.App. 724, 803 P.2d 275, 278 (1990) (employee on special errand when he returned to work after regular shift to load truck which was scheduled to leave early the next morning, and truck could not be loaded during regular shift because of its late arrival at warehouse); *Johnson v. Fairbanks Clinic,* 647 P.2d 592, 595 (Alaska 1982) (physician traveled to hospital for pre-surgery consultation

with patient in the middle of a long weekend, where evidence indicated that physician "was rarely called to perform work during a long weekend"); *Briggs v. Am. Biltrite,* 74 N.J. 185, 376 A.2d 1231, 1234 (1977) (employee traveled to work on Sunday, outside of regularly scheduled workdays, for overtime work); *Heinz v. Concord Union Sch. Dist.,* 117 N.H. 214, 371 A.2d 1161, 1163 (1977) (high school teacher killed in motorcycle accident during travel to student dance he had agreed to chaperone, after normal working hours, as non-routine work-related responsibility); *In re Papanastassiou's Case,* 362 Mass. 91, 284 N.E.2d 598, 600–01 (1972) (research chemist made evening trip to workplace to monitor ongoing experiment); *Jonas v. Lillyblad,* 272 Minn. 299, 137 N.W.2d 370, 371 (1965) (hotel maintenance worker made evening trip to hotel to adjust furnace and boiler).

despite hazardous weather conditions. Although this was a regular work day and decedent would routinely drive to work or to the train station, the record supports an inference that decedent would have remained at home on this particular day absent this direction.

*Id. See also Walsh v. Indus. Comm'n,* 34 Colo.App. 371, 527 P.2d 1180, 1181 (1974) ("special errand" exception applied where employee was instructed to report for work "by any means available to her" after she initially attempted to make commute and got stuck in the snow, and reported to employer that she was unable to attend).

Because on the date of the accident Ms. Hale would normally have been able to work from home with impunity due to the inclement weather, the fact that she was traveling to the Company's office on a regularly scheduled work day does not defeat the application of the "special errand" exception.

## Conclusion

The undisputed facts, derived from the testimony of the Company's principals, establish that Laura Hale was engaged in a "special errand" on behalf of the Company at the time she negligently caused the accident in which Tran was injured. Because Ms. Hale was acting in the course and scope of her employment at the time of the injury-causing accident, the Company was vicariously liable for the damages which the jury found to have been proximately caused by Ms. Hale's negligence. We accordingly reverse the circuit court's judgment as to Dave's Electric Company, and remand for the circuit court to enter a judgment notwithstanding the verdict in favor of Tran and against the Company.

All concur.