ALL AMERICAN PAINTING, LLC, Consolidated Construction Group, Inc., Goodland Foods, Inc., and Titan Tube Fabricators, Inc., Appellants,

v.

FINANCIAL SOLUTIONS AND ASSOCIATES, INC., Respondent.

No. SC 90275.

Supreme Court of Missouri, En Banc.

June 29, 2010.

Alan S. Mandel and Michael J. Sudekum, Schlueter, Mandel & Mandel LLC, St. Louis, Max G. Margulis, Margulis Law Group, Chesterfield, for appellants.

Steven W. Koslovsky, Steven Koslovsky LLC, Maryland Heights, for respondent.

PATRICIA BRECKENRIDGE, Judge.

All American Painting, LLC, Consolidated Construction Group, Inc., Goodland Foods, Inc., and Titan Tubes Fabricators, Inc., (plaintiffs) appeal from the judgment entered against them after a jury verdict in favor of Financial Solutions and Associates, Inc., on plaintiffs' claims that Financial Solutions violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.[1] Because the admitted facts entitled plaintiffs to judgment against Financial Solutions, the trial court erred in not granting plaintiffs a judgment notwithstanding the verdict after trial. Accordingly, the judgment is reversed, and the cause is remanded.

**Factual and Procedural Background**

■ Under the general standard of review for denial of a motion for judgment notwithstanding the verdict, the evidence is viewed in the light most favorable to the jury's verdict. *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 456–57 (Mo. banc 2006). In that light, the facts of the case are as follows: In 2005, Financial Solutions entered into a contract with an advertising company, Activecore Technologies, Inc., to send facsimile advertisements

---

1. All references to 47 U.S.C. § 227 are to the act as in effect in March 2005 when plaintiffs received the advertisements in question. 47 U.S.C. § 227 was materially amended in July 2005 by the Junk Fax Prevention Act of 2005. Pub.L. No. 109–21, 119 Stat. 359 (2005).

on behalf of Financial Solutions. The purpose of the advertisements was to promote investment services sold by Financial Solutions. The advertisements at issue were sent by Activecore and received on facsimile machines or computers owned by the plaintiffs. The advertisements were directed to plaintiffs' officers or employees and included the corporate or fictitious names of the plaintiffs. Financial Solutions did not seek permission from any of the recipients to send the advertisements. After receiving the advertisements, plaintiffs filed the present suit against Financial Solutions, claiming that Financial Solutions violated the TCPA.[2] Plaintiffs' petition sought statutory damages under the act as well as injunctive relief.

The case was tried to a jury. At trial, the president and chief executive officer of Financial Solutions, Michael Grimes, testified on behalf of his company. On direct examination by plaintiffs' counsel, Mr. Grimes testified that Financial Solutions hired Activecore to send advertisements on its behalf. He stated that when he first discussed the possibility of having Activecore send advertisements by facsimile for Financial Solutions, he raised concerns about the legality of sending them. Activecore advised Mr. Grimes that it would include "opt-out" provisions at the bottom of each advertisement, which would allow recipients to remove themselves from the recipient list if they did not wish to receive future solicitations. Activecore assured Mr. Grimes that inclusion of such a provision would ensure compliance with the law. During direct examination, however, Mr. Grimes acknowledged that it would be impossible for a recipient to opt-out from receiving future advertisements without

receiving at least one initial advertisement by facsimile.

Mr. Grimes further testified that, when he was contacted by plaintiffs' attorney after plaintiffs had received the unsolicited advertisements, he again sought assurances from Activecore concerning the legality of the advertisements. Activecore advised Mr. Grimes that it was a member of certain "organizations and associations" of which plaintiffs were also members and, therefore, Activecore had the right to send facsimiles to plaintiffs on an opt-out basis. Finally, Mr. Grimes testified that Financial Solutions did not seek or receive express invitation or permission from any of the plaintiffs to send the advertisements and that Financial Solutions did not have an established business relationship with any of the plaintiffs.

On cross-examination by Financial Solutions' attorney, Mr. Grimes testified that Financial Solutions' contract with Activecore stated that Financial Solutions had access to all of Activecore's standardized industry classification (SIC) code marketing lists. He testified that Activecore explained to him that SIC code marketing lists were the associations and organizations that Activecore had joined, which enabled it to send e-mails and facsimiles to the plaintiffs.

After Mr. Grimes' testimony, plaintiffs read into evidence stipulated facts that were admitted by the parties. It was admitted that the advertisements in evidence were true and accurate copies of those transmitted by Activecore on behalf of Financial Solutions and that, prior to sending the advertisements, Financial Solution never sought permission to send them from anyone employed by plaintiffs. It

**2.** The TCPA is a federal act that prohibits the use of facsimile machines to send unsolicited commercial advertisements and provides for statutory damages to be paid by the violator to the persons or entities who received such advertisements in violation of the act. 47 U.S.C. § 227.

also was admitted that Financial Solutions entered into a contract with Activecore to send the advertisements on its behalf and that they were designed to generate business and advertise products sold by Financial Solutions. It further was admitted that Financial Solutions had no reason to believe the advertisements were not received by plaintiffs.

Thereafter, plaintiffs read into evidence deposition testimony of their corporate representatives. Each corporate representative testified that his company had received the advertisement in question. Three of the advertisements were received on facsimile machines, while two of the advertisements were received on a computer connected to a printer.

At the close of all of the evidence, plaintiffs moved for a directed verdict, which the trial court denied. At the instruction conference, plaintiffs' counsel proffered verdict directors for each plaintiff. The trial court accepted verdict directors over Financial Solutions' objection that the verdict directors did not posit all of the necessary elements to establish a violation under the TCPA. Financial Solutions did not articulate any specific element it claimed was omitted. Financial Solutions then proffered an affirmative converse instruction to each verdict director concerning whether Financial Solutions controlled the actions of Activecore, which the trial court refused. It did not proffer any affirmative defense instructions regarding "express invitation" or "express permission."

The jury returned verdicts in favor of Financial Solutions and against plaintiffs. Plaintiffs then filed a timely motion for judgment notwithstanding the verdict or,

in the alternative, for a new trial. The trial judge overruled the motion and entered judgment in accordance with the jury's verdict. Plaintiffs appealed. After a decision by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

On appeal, plaintiffs claim the trial court erred in overruling their motion for judgment notwithstanding the verdict because Financial Solutions stipulated to all of the facts necessary for them to recover under the TCPA and it failed to prove any legally cognizable defense.[3]

## Plaintiffs were Entitled to Judgment Notwithstanding the Verdict

The TCPA makes it unlawful for any person "to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is defined under the act as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).[4] Therefore, a person or entity violates the TCPA by sending material advertising the commercial availability or quality of property, goods, or services to a facsimile machine without the recipient's prior express invitation or permission.

The TCPA creates a private cause of action for any person or entity that receives an advertisement in violation of the act and provides for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations. 47 U.S.C. § 227(b)(3)(A)-(B). Ad-

---

**3.** Because this error is dispositive, other errors raised by plaintiffs are not discussed.

**4.** The term "person" as used in the TCPA includes "corporations, companies, associations, firms, partnerships, societies, and joint

stock companies, as well as individuals." 1 U.S.C. § 1 (2000); *Reynolds v. Diamond Foods & Poultry, Inc.,* 79 S.W.3d 907, 909 n. 2 (Mo. banc 2002).

ditionally, the TCPA provides that treble damages may, in the court's discretion, be assessed in cases where the defendant "willfully or knowingly" violates the act. 47 U.S.C. § 227(b)(3).

Plaintiffs assert that the trial court erred in overruling their motion for judgment notwithstanding the verdict because Financial Solutions admitted all of the facts necessary for them to recover under the TCPA and Financial Solutions failed to present any legally cognizable defense. Therefore, plaintiffs claim no facts remained to be submitted to the jury.

■ The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict. *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007). Parties bearing the burden of proof generally are not entitled to a directed verdict. *Brandt v. Pelican*, 856 S.W.2d 658, 664 (Mo. banc 1993). However, the plaintiff is entitled to a directed verdict in the unusual situation where the defendant has admitted in its pleadings, by counsel, or through the defendant's individual testimony the basic facts of the plaintiff's case. *Id.* In such instances, the plaintiff is entitled to a directed verdict because there is no question of fact remaining for the jury to decide. *Id.*

■ In the present case, the stipulated facts established all of the elements necessary to prove violations of the TCPA and entitle plaintiffs to relief under the act. Financial Solutions admitted that it entered into a contract with Activecore to send advertisements on its behalf and that those advertisements were designed to generate business and advertise products sold by Financial Solutions. Financial Solutions further stipulated that the advertisements were actually sent by facsimile and that it had no reason to believe the advertisements were not received by the plaintiffs in this case. Finally, it stipulated that the copies of the advertisements admitted into evidence were true and accurate copies of the advertisements sent.

■ It is a well-settled that stipulated facts must be accepted by the jury as conclusively proven. *State v. Holt*, 592 S.W.2d 759, 769 (Mo. banc 1980). "A stipulated fact is not for the consideration of the jury, and the jury may not decide such fact contrary to the parties' stipulation." 83 C.J.S. Stipulations § 93 (2000). Financial Solution's stipulated facts, taken together, conclusively established all of the elements required to recover under the TCPA, and the jury was required to accept those facts as true.

■ Although all of the facts needed to recover under the TCPA were stipulated, Financial Solutions argues that a JNOV was nevertheless inappropriate because there were disputed issues of fact regarding whether plaintiffs received the advertisements at issue. Financial Solutions argues there was evidence to support a finding by the jury that the advertisements were not actually sent to the named plaintiffs because the headers on each of the facsimiles were addressed to individuals rather than to plaintiffs.[5] In essence, Financial Solutions argues that the jury could have believed that plaintiffs were not the proper parties to bring suit because it was the named individuals, not plaintiffs, who suffered injury under the TCPA.

---

5. The headers read as follows: "To: RICK PHILLIPS ALL AMERICAN PAINTING CO"; "To: KEVIN FRANKLIN CONSOLIDATED CONSTRUCTION GRP"; "To: STEVEN BECKER LAZY SUSAN IMAGINATIVE CTRNG"; "To: DAVE MILL GATEWAY RACK."

■ Whether plaintiffs were the proper parties is a question of standing, which is an issue of law the Court reviews *de novo*. *Mo. State Med. Ass'n v. State*, 256 S.W.3d 85, 87 (Mo. banc 2008). To have standing, the parties seeking relief must have "some legally protectable interest in the litigation...." *Comm. for Educ. Equality v. State*, 294 S.W.3d 477, 484 (Mo. banc 2009). In the present case, plaintiffs have a "legally protectable interest" as they are within the class of persons and entities intended to be protected by the TCPA and they suffered injury by receiving the unauthorized facsimiles. The legislative history of the TCPA shows that Congress was concerned about the costs imposed on the recipient of an unsolicited facsimile, including the cost associated with use of the machine and the cost of paper used to print the advertisements. *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1166 n. 3 (S.D.Ind.1997); *see also Phillips Randolph Enters., LLC v. Adler–Weiner Research Chicago, Inc.*, 526 F.Supp.2d 851, 852 (N.D.Ill.2007) ("Congress' primary purpose in enacting the TCPA was to prevent the shifting of advertising costs to recipients of unsolicited fax advertisements....").

Here, plaintiffs owned the machines and computers on which the advertisements were received. Plaintiffs paid for the ink and paper that was consumed to print those advertisements. As such, plaintiffs were the parties damaged by the receipt of the unsolicited advertisements. The legislative history of the TCPA shows that the act was intended to protect against this type of harm. Therefore, the plaintiffs had standing to sue under the TCPA. Financial Solutions' argument to the contrary is without merit.

Additionally, if the Court were to accept Financial Solutions' argument that the name at the top of the header controls who has a cause of action under the TCPA, advertisers could circumvent the act and avoid liability completely by simply addressing every advertisement to "John Doe." This Court presumes that Congress did not intend to enact an absurd law, incapable of being enforced. *City of Joplin v. Joplin Water Works Co.*, 386 S.W.2d 369, 373–74 (Mo.1965).

■ For its final claim, Financial Solutions argues that a JNOV would have been inappropriate because Mr. Grimes' testimony regarding Activecore's joint membership in certain trade organizations with plaintiffs raised a factual issue as to whether plaintiffs had consented to receive the advertisements in question. Specifically, Financial Solutions argues that the jury could have inferred from Mr. Grimes' testimony that plaintiffs gave prior express invitation or permission to Financial Solutions to send the advertisements. Financial Solutions further claims that it was plaintiffs' burden under the TCPA to prove lack of prior express invitation or permission.

Contrary to Financial Solutions' argument, plaintiffs did not have the burden to prove lack of prior express invitation or permission. Although the language of the TCPA does not specify which party has the burden of proof regarding prior express invitation or permission, the Federal Communications Commission (FCC) has interpreted the act as placing the burden to prove express invitation or permission on the sender of the advertisement, not the recipient. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3812 (2006) ("In the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was

given.").[6] This Court must accept the FCC's interpretation, absent a federal court of appeals' decision rejecting it. *See* 28 U.S.C. § 2342(1); *Carnett's, Inc. v. Hammond,* 279 Ga. 125, 610 S.E.2d 529, 531 n. 18 (2005). No decision of a federal court of appeals invalidating the FCC's ruling that the sender has the burden of proving prior express invitation or permission was cited by Financial Solutions or found by this Court. Accordingly, Financial Solutions had the burden of proving express invitation or permission; therefore, it had to present evidence to prove the defense and proffer an instruction on the defense. It did not do so.

At trial, the evidence presented by Financial Solutions was not sufficient to prove that the plaintiffs gave Activecore express invitation or permission to send the advertisements. The only evidence arguably indicating plaintiffs consented to receive the faxes was Mr. Grimes' testimony regarding Activecore's joint membership in certain trade organizations with plaintiffs. Mr. Grimes testified that as members of the same organizations, Activecore had access to membership lists containing plaintiffs' facsimile numbers, which enabled Activecore to send advertisements to them. While the jury was entitled to believe that testimony, the evidence was not legally sufficient to allow the jury to reasonably infer that plaintiffs gave Financial Solutions prior express permission to send the facsimiles. At most, Mr. Grimes' testimony suggested that Financial Solutions had plaintiffs' implied permission to send the advertisements, which is insufficient under the TCPA. *See Travel Travel, Kirkwood, Inc. v. Jen N.Y. Inc.,* 206 S.W.3d 387, 392–93 (Mo.App.

2006) (sender's membership in the same industry network as facsimile recipients was insufficient to show sender had express invitation or permission to send advertisements to recipients). Therefore, the jury could not reasonably infer that plaintiffs gave prior express invitation or permission on the basis of Mr. Grimes' testimony.

Additionally, Financial Solutions failed to proffer a jury instruction on the affirmative defense of prior express invitation or permission. By failing to proffer a jury instruction on prior express invitation or permission, Financial Solutions waived the defense. *See Kansas City v. Keene Corp.,* 855 S.W.2d 360, 367 (Mo. banc 1993); *Mo. Dept. of Transp. ex rel. PR Developers, Inc. v. Safeco Ins. Co. of Am.,* 97 S.W.3d 21, 40 (Mo.App.2002). Therefore, plaintiffs were entitled to judgment in their favor.

### Conclusion

All of the facts necessary to establish a claim under the TCPA were admitted by Financial Solutions. Plaintiffs had standing to bring the lawsuit because they suffered injuries by receiving unsolicited advertisements on their facsimile machines. Financial Solutions did not present sufficient evidence to allow the jury to reasonably infer it had plaintiffs' prior express invitation or permission to send the advertisements. Moreover, Financial Solutions waived the defense of express invitation or permission by failing to proffer a jury instruction on that issue, so there was no question of fact remaining for the jury to decide. Accordingly, plaintiffs were entitled to a JNOV on their claims against Financial Solutions for violating the TCPA.

6. Although the FCC's order became effective in 2006, after the advertisements in this case were sent, the order specifically states, "Senders who claim they obtained a consumer's prior express invitation or permission to send them facsimile advertisements prior to the effective date of these rules will not be in compliance unless they can demonstrate that such authorization met all the requirements as adopted herein." *Id.*

For the foregoing reasons, the judgment of the trial court is reversed, and the case is remanded.

All concur.