**Kenneth D. LEDURE, Plaintiff–Appellant,**

v.

**BNSF RAILWAY COMPANY, Defendant–Respondent.**

**No. SD 30938.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 5, 2011.

Motion for Rehearing or Transfer Denied Aug. 29, 2011.

Application for Transfer Denied Oct. 25, 2011.

---

11. The Division cites Mo. Const. art.III, § 36, art. IV, §§ 23 and 28.

Kenneth E. Barnes, T.K. Smith, Jason D. Kander, Kansas City, for Appellant.

Laurel E. Stevenson, Matthew J. Growcock, Bryan R. Berry, Springfield, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Kenneth D. Ledure ("Appellant") appeals from a judgment entered on a jury's verdict in favor of BNSF Railway Company ("Respondent") in his suit under the Federal Employers' Liability Act.[1] In the suit, Appellant alleged that Respondent was negligent in failing to report or repair a defective switch, and that negligence resulted in whole or in part in an injury to his back. Appellant now claims the trial court erred in (1) denying his motion for judgment notwithstanding the verdict, (2) failing to strike three venirepersons for cause, (3) denying his motion for new trial based on alleged misconduct by two jurors without an evidentiary hearing, and (4) denying his motion for new trial because the jury's verdict represents a miscarriage of justice under the totality of the circumstances. We affirm the judgment.

**Facts and Procedural History**

In accordance with our standard of review, we review the evidence in the light most favorable to the jury's verdict, giving the jury's verdict the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict. *See All American Painting, LLC v. Financial Solutions and Associates, Inc.,* 315 S.W.3d 719, 720 (Mo. banc 2010); *Giddens v. Kansas City Southern Railway Co.,* 29 S.W.3d 813, 818 (Mo. banc 2000).

On September 3, 2008, Appellant was employed by Respondent as a brakeman in the Tomlinson yard in Blytheville, Arkansas. Appellant testified that he injured his back that evening when he attempted to throw switch 3961E in the Tomlinson yard, and the switch "stopped" midway through the throw "and then went on over." A switch is a manually-operated device that allows an individual to change the direction a train travels by changing the tracks the train travels on.

Following his injury, Appellant filed suit against Respondent under the Federal Employers' Liability Act alleging that switch 3961E was defective and hard to

1. 45 U.S.C.A. §§ 51, *et seq.* (2010).

throw, Respondent was negligent in failing to report or repair the switch, and that negligence resulted in whole or in part in an injury to Appellant's back. The jury returned a verdict in favor of Respondent. Appellant complains of the responses of four jurors: Venirepersons Oesterreich, Brake, Smith and Bell.

### Oesterreich

Venireperson Oesterreich stated he was employed as a project manager for a construction company, and one of his responsibilities was worker safety. In response to the question "[h]ow many people feel that most of the lawsuits filed today are frivolous ...," Oesterreich stated:

> I feel the same way she does. And a lot of people seem to want something for nothing. And it's—America is sue happy. Any time you watch the news or read a paper, somebody is suing somebody else for something that common sense should have told them not to do.

A short time later after hearing the question "[a]nybody here think we're just putting too much of a demand on companies in general to be safe these days," Venireperson Oesterreich said "I think some of the OSHA regulations are pretty ridiculous." During argument on strikes for cause, Appellant requested that Venireperson Oesterreich be stricken for cause because, as part of his work, he "has come to the conclusion that a lot of the OSHA regulations about workplace safety are just, quote, ridiculous." The trial court denied the request.

### Brake

Venireperson Brake stated she was employed as a supervisor at a local bank. In response to Appellant's counsel's inquiry, Venireperson Brake stated she "worked seventeen years with [Respondent]. And my dad worked forty-three years as a conductor." She did "[a] lot of different things. Started as a yard clerk and then went into management" with Respondent. Venireperson Brake went on to answer counsel's subsequent questions as follows:

[APPELLANT'S COUNSEL]: Would anything about that experience start Kenny off a little bit ahead or a little bit behind in this case?

VENIREPERSON BRAKE: It's hard to know. I mean, I guess I would like to say I'd be objective. But, honestly, it would—I would have to hear the facts, I guess.

THE REPORTER: I can't hear you, ma'am. I'm sorry.

VENIREPERSON BRAKE: It's hard for me to say, to know for sure that I would be totally objective because I know both sides of it, so to speak. But I would have to hear the facts to know.

[APPELLANT'S COUNSEL]: If you had to say right now if one party was a little bit ahead and one party was behind, which one would you say starting out a little bit ahead?

VENIREPERSON BRAKE: I don't know.

[APPELLANT'S COUNSEL]: Okay. Fairly equal then as we sit here right now?

VENIREPERSON BRAKE: Right now.

Later, in response to counsel for Appellant's question "does anybody here own any stock, whether it's by mutual fund or directly in the BNSF," Venireperson Brake answered as follows:

VENIREPERSON BRAKE: I did used to work there and received stock options. And I'm invested through the company.

[APPELLANT'S COUNSEL]: And you still have some ownership or some stock options there?

VENIREPERSON BRAKE: Yes.

[APPELLANT'S COUNSEL]: So, since you own the company that we have the Defendant in the chair, might Mr. Ledure start off just a little bit behind today?

VENIREPERSON BRAKE: You know, earlier, you know, I've been struggling with that same thing. It's—I want to say I can be in an objective place. But my stock ownership is pretty small.

[APPELLANT'S COUNSEL]: They don't call you with the big decisions?

VENIREPERSON BRAKE: No.

[APPELLANT'S COUNSEL]: All right. So you think we're still pretty even?

VENIREPERSON BRAKE: Yeah.

In response to counsel for Respondent's follow-up questions, Venireperson Brake replied:

[RESPONDENT'S COUNSEL]: ... And my question for you is this, ma'am: Given that you have stock options with BNSF, can you be fair and impartial and decide this case based on the evidence and the law?

VENIREPERSON BRAKE: Yes, I believe so.

### Bell

Venireperson Bell stated she was a retired owner of a cabinet manufacturing company. In response to the question "do any of you believe that BNSF should not be legally and financially responsible for the actions of their employees," Venireperson Bell stated (1) "I think that would depend on the circumstances," (2) "[w]ell, because someone works for a company, that company cannot take 100 percent liability for every action of that employee, whether on the job or off the job," (3) "[n]ow, if the company puts the employee into a dangerous situation, I guess it all depends on the facts. Which company? What person? What happened? Where were they? You know, there's a lot of factors there," and (4) she would want to hear those factors before she made her mind up. Appellant's counsel interpreted these remarks to mean Venireperson Bell "needed to know more information before she could determine" whether "she would hold a company responsible for" its employees' actions. Venireperson Bell confirmed this interpretation was correct. In response to the question "[h]ow many people feel that most of the lawsuits filed today are frivolous ...," Venireperson Bell responded as follows:

VENIREPERSON BELL: But there are many frivolous suits. But people need to take responsibility for their own actions.

[APPELLANT'S COUNSEL]: Does that include individuals and companies?

VENIREPERSON BELL: And corporations.

[APPELLANT'S COUNSEL]: So you're pretty equal—

VENIREPERSON BELL: I think so.

[APPELLANT'S COUNSEL]:—starting off? Nobody is ahead or behind?

Later, Venireperson Bell responded:

[APPELLANT'S COUNSEL]: Did you have employees at [your previous] business?

VENIREPERSON BELL: Yes.

[APPELLANT'S COUNSEL]: How many?

VENIREPERSON BELL: Twenty-six.

[APPELLANT'S COUNSEL]: Were they a union shop or—

VENIREPERSON BELL: Oh, no.

[APPELLANT'S COUNSEL]: Not big enough for that?

VENIREPERSON BELL: (Shook head.)

Appellant also requested that Venireperson Bell be stricken for cause because "[i]t was a small thing, but it really caught my ear. When she was asked whether or not the company that she owned had been union, she had a pretty emphatic answer of 'Oh, no,' as if that was just a pretty biased thing in her mind. And, obviously, given that our client is a union member, that caught my ear." The trial court denied the request.

Counsel for Respondent closed voir dire with the following question:

Other than those of you have already told us this, is there anyone else here who just doesn't feel that they can sit and listen to the evidence in this case and the law that is given and decide this case based solely on the evidence and the law?

I don't see any hands.

Appellant subsequently used a peremptory challenge to strike Venireperson Oesterreich from the jury.

### Smith

Venireperson Smith stated he was employed part-time by Pearson Testing Service administering certification tests. He also noted he "worked twenty-six years, social security, accepting, processing disability claims, both at the initial and hearing levels." Appellant complains of Smith's conduct during deliberations.

### Point I

■ Appellant contends the trial court erred in denying Appellant's motion for judgment notwithstanding the verdict because the evidence established Respondent's liability for Appellant's injury as a matter of law. As Respondent correctly notes in its brief and as Appellant acknowledges in his reply brief, Appellant failed to preserve the claimed error for appellate review.

■ Appellant's motion for judgment notwithstanding the verdict requested judgment on the ground that the facts admitted by Respondent entitled Appellant to judgment that Respondent was liable for Appellant's injury as a matter of law. Rule 72.01(b) provides in part that "a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the motion for a directed verdict." Consistent with this rule, a motion for judgment notwithstanding the verdict preserves for appellate review only those errors included in a motion for directed verdict. *Empiregas Inc. of Branson v. Tri–Lakes Propane Co.*, 764 S.W.2d 156, 157 (Mo.App. S.D. 1989); *Fust v. Francois*, 913 S.W.2d 38, 45 (Mo.App. E.D.1995). Likewise, a plaintiff who requests and receives instructions submitting his theory of liability to the jury without first requesting a directed verdict on liability fails to preserve for appellate review claimed errors in submitting the case to the jury. *Empiregas Inc. of Branson*, 764 S.W.2d at 157.

Although Appellant filed motions for a directed verdict on Respondent's affirmative defenses of mitigation of damages and contributory negligence, Appellant did not file a motion for a directed verdict on his claim that Respondent was liable for his injury. Appellant also requested and received instructions submitting his theory of liability to the jury. In these circumstances, Appellant's motion for judgment that Respondent was liable for Appellant's injury as a matter of law notwithstanding the jury's verdict preserved nothing for appellate review.

■ If reviewed at all, unpreserved error is reviewed only for plain error. *Farmers Exchange Bank v. Metro Contracting Services, Inc.,* 107 S.W.3d 381, 395 (Mo.App. W.D.2003). Plain error review is conducted under the following principles.

■ Rule 84.13(c)[2] provides "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *Farmers Exchange Bank,* 107 S.W.3d at 395 (internal citations omitted). Appellant bears the burden of establishing manifest injustice or a miscarriage of justice amounting to plain error. *Davolt v. Highland,* 119 S.W.3d 118, 136 (Mo.App. W.D.2003).

We decline to review Appellant's claim for plain error. Appellant's complaint is that the jury failed to find that Respondent was negligent. Appellant cites evidence supporting his claim of negligence as a matter of law; however, Appellant failed to address the remaining elements that constitute a negligence claim, such as causation and damages. As such, there is nothing to review. Point I is denied.

### Point II

In Appellant's second point he contends the trial court erred in failing to strike Venirepersons Oesterreich, Brake and Bell for cause for bias disclosed during voir dire. Prior to determining whether the trial court erred in failing to strike a venireperson, we address the issue of whether the claimed error was preserved.

■ Claimed error that is waived is not subject to review on appeal. *State v. Johnson,* 284 S.W.3d 561, 582 (Mo. banc 2009); *State v. Mead,* 105 S.W.3d 552, 556 (Mo.App. W.D.2003). A waiver requires an intentional relinquishment of a known right, and occurs when counsel has affirmatively acted in a manner precluding a finding that the failure to object was a product of inadvertence or negligence. *Mead,* 105 S.W.3d at 555–56. Claimed error that is merely forfeited through inadvertence or negligence and not waived is reviewed on appeal only for plain error. *Johnson,* 284 S.W.3d at 582; *Mead,* 105 S.W.3d at 556.

■ In Appellant's second point, he argues that the trial court erred in denying his challenges for cause to venirepersons Oesterreich and Bell. Appellant contends that the trial court erred because (1) venireperson Oesterreich was biased against Appellant in that he believed America is sue happy, and "some of the OSHA regulations are pretty ridiculous," and (2) venireperson Bell was biased against Appellant in that she "indicated her belief that there were too many frivolous lawsuits to the point that [Appellant] would start out at a disadvantage," and was unable to follow the law in that she "indicated ... she could not find a corporate defendant liable for the acts of its employees."

### Oesterreich

Appellant requested at trial that Mr. Oesterreich be stricken for cause based on his belief that some OSHA regulations are pretty ridiculous. Appellant did not include the denial of his challenge for cause to Mr. Oesterreich in his motion for new trial. We note that Appellant used a peremptory challenge to remove Mr. Oesterreich from the jury. As a result, the trial

___

2. Unless otherwise indicated, all references to rules are to Missouri Court Rules (2011).

court's denial of Appellant's challenge for cause to Mr. Oesterreich is not reversible error even if the denial in fact was erroneous. *Rogers v. B.G. Transit Corp.*, 949 S.W.2d 151, 155 (Mo.App. S.D.1997); *Giles v. Riverside Transport, Inc.*, 266 S.W.3d 290, 298 (Mo.App. W.D.2008).

### Bell

■ Appellant requested that Ms. Bell be stricken for cause at trial, but only on the ground of a perceived anti-union bias; he did not include the denial of his challenge in his motion for new trial.

Appellant's characterization of Ms. Bell's statements during *voir dire* is not supported by the record. Appellant's counsel asked multiple questions involving both "too many lawsuits" and starting off behind that prompted Ms. Bell to raise her hand. When Ms. Bell actually spoke, she stated "there are many frivolous suits" and she thought nobody was ahead or behind starting off. Further, as the quotes Appellant included in his brief show, Ms. Bell's statements in response to Appellant's counsel's question about BNSF's responsibility for its employees' actions, actually were that (1) her answer depended on the circumstances, (2) a company cannot take 100% liability for its employees' actions "whether on the job or off the job," and (3) "she needed more information" before she could answer. Appellant also fails to note Ms. Bell's contemporaneous statements "[y]ou know, there's a lot of factors there," and (4) she would want to hear those factors before she made her mind up. There was no error in denying Appellant's request to strike Ms. Bell for cause for any anti-union bias and no plain error on any other basis.

A party who is aware of information affecting a potential juror's qualification to serve as a juror must challenge the potential juror before the person is sworn as a juror, or the party waives any objection to the juror on the basis of that information and cannot assert the objection in a motion for new trial following an adverse verdict. The reason for the rule is that a party is not permitted to speculate by withholding objection to a potential juror until the party sees whether the verdict is favorable or unfavorable. *See Farm Credit Services of Western Mo., P.C.A. v. Slaughter*, 850 S.W.2d 433, 436 (Mo.App. W.D.1993); *Lemonds v. Holmes*, 241 Mo.App. 463, 236 S.W.2d 56, 62 (Mo.App.Spfd.1951); *see also Cook v. Kansas City*, 358 Mo. 296, 214 S.W.2d 430, 433 (1948).

### Brake

■ Appellant also argues that the trial court committed plain error in seating Venireperson Brake because she was a former management employee for Respondent and was a shareholder of Respondent at the time of trial. Appellant did not challenge Ms. Brake for cause at trial on any ground and first raised his current claim of error in seating Ms. Brake as a juror in a supplemental brief to his motion for new trial that was filed more than thirty days after entry of the judgment in this case.[3] As noted in *State v. Baumruk*, 280 S.W.3d 600 (Mo. banc 2009), "defense counsel failed to strike peremptorily [a

---

**3.** Judgment was entered on August 25, 2010, and Appellant filed his supplemental brief on or after October 15, 2010. Rule 78.04 requires a motion for new trial to be filed within thirty days after entry of judgment. A motion for new trial cannot be amended to add a new point after the expiration of this time, and an untimely amendment preserves nothing for review. *Nguyen v. Buffington*, 236 S.W.3d 704, 706–07 (Mo.App. S.D.2007). As a result, even if Appellant had challenged Ms. Brake for cause at trial on the ground now asserted, Appellant would have forfeited the error and been limited to plain error review.

venireperson] or seek to strike him for cause. As such, this challenge is highly suspect." *Id.* at 616. " 'When the defendant is aware of facts which would sustain a challenge for cause, he must present his challenge during the voir dire examination or prior to the swearing of the jury, otherwise, the point is waived.' " *State v. Goble*, 946 S.W.2d 16, 18 (Mo.App. S.D.1997) (quoting *State v. Marlow*, 888 S.W.2d 417, 420 (Mo.App. W.D.1994)). Appellant's counsel was fully aware during *voir dire* that Ms. Brake was a current shareholder of Respondent and formerly was a management employee of Respondent. Knowing this information, Appellant's counsel did not challenge Ms. Brake for cause on any ground. As a result, Appellant's counsel intentionally relinquished a challenge for cause on these grounds. Counsel's intentional relinquishment of these grounds resulted in a waiver of these grounds. " 'A trial court is under no duty to strike a juror on its own motion.' " *Baumruk*, 280 S.W.3d at 616 (quoting *State v. Hadley*, 815 S.W.2d 422, 424 (Mo. banc 1991)). We will not find the trial court erred in not sua sponte striking Ms. Bell for cause based on this information. Such an argument is inconceivable. *Gilleylen v. Surety Foods, Inc.*, 963 S.W.2d 15, 18 (Mo.App. E.D.1998). Appellant's second point is denied.

## Point III

In Appellant's third point, he contends the trial court erred in denying his motion for new trial without an evidentiary hearing because jurors Smith and Brake committed jury misconduct. A trial court's ruling on a motion for new trial based on juror misconduct will not be reversed unless the trial court abused its discretion. *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 86–87 (Mo. banc 2010). "A trial court abuses its discretion if its ruling 'is clearly against the

logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Id.* (quoting *Wingate by Carlisle v. Lester E. CoxMed. Ctr.*, 853 S.W.2d 912, 917 (Mo. banc 1993)).

Appellant asserts juror Smith committed jury misconduct in that he (1) made statements to other jurors before deliberations began that "the judge was biased against female lawyers," (2) "discuss[ed] the evidence in the case" before deliberations, (3) made statements to other jurors before and during deliberations about Appellant's eligibility for "Social Security disability" benefits, and (4), in jury deliberations, stated that "he had performed a number of Social Security investigations and viewed [Appellant] as a faker." Appellant argues that the allegations in subparagraphs (1) and (4) indicate Juror Smith had at least "a potential bias against" Respondent, and that the allegations in subparagraphs (2) and (3) show Juror Smith engaged in premature deliberations.

Appellant claims juror Brake committed jury misconduct in that she made comments during jury deliberations that were based on her prior employment with Respondent and not evidence admitted at trial. Appellant alleges Brake stated (1) Respondent has very good insurance and obviously has already taken care of Appellant, (2) Respondent is very safe, and (3) Respondent would have fixed anything that was wrong. Appellant argues these comments "amounted to Juror Brake providing extrinsic evidence regarding the safety habits of" Respondent.

The only evidence that Appellant presented to support these allegations were affidavits of jurors and an alternate juror that were attached to Appellant's motion for new trial and supplemental brief. Re-

32

spondent objected to the submission of the affidavits in written motions to strike the affidavits on the ground the affidavits were inadmissible to impeach the jury's verdict. The trial court conducted a hearing on Appellant's motion for new trial at which counsel for the parties presented argument on October 7, 2010. No additional evidence was presented at the hearing. The trial court overruled Appellant's motion for new trial.

■■■■■ In Missouri:

jurors may only speak through their verdict ... [and] cannot speak of any partiality or misconduct that transpired in the jury room nor of the motives which induced or operated to produce the verdict. [A] juror's testimony or affidavit may not be used to impeach the verdict as to misconduct inside or outside the jury room whether before or after the jury is discharged.

*Williams v. Daus*, 114 S.W.3d 351, 364 (Mo.App. S.D.2003) (en banc) (internal citations and quotations omitted). The rule also applies to an alternate juror. *Buckhanan ex rel. Buckhanan v. Westbury Ob–Gyn, Inc.*, 985 S.W.2d 874, 875 (Mo.App. E.D.1998). The Missouri Supreme Court has recognized two exceptions to the rule: (1) jurors may testify that a juror made statements during jury deliberations that reflected ethnic or religious bias or prejudice on the part of the juror (*see Fleshner*, 304 S.W.3d at 89–90), and (2) a juror may

testify that the juror independently gathered evidence outside the courtroom (*see Travis v. Stone*, 66 S.W.3d 1, 4 (Mo. banc 2002)).[4] Though not expressly addressed in *Fleshner*, we believe the reasoning of *Fleshner* would extend to statements that reflected a juror was biased based on gender or other constitutionally impermissible ground.

Neither of the exceptions recognized by our Supreme Court is applicable in this case. With respect to the *Fleshner* exception, Appellant alleges only that, prior to deliberations, Smith indicated the judge was biased against female lawyers. Even if true, this statement reflects only Smith's perception of the trial court's gender bias and reflects nothing about Smith's individual biases or prejudices. As a result, jurors were not entitled to testify about this statement. We also note that, even if Smith's statement about the judge were in evidence, it would not support a conclusion that the trial court abused its discretion in overruling Appellant's motion for new trial because the statement does not undermine in any way the fairness and impartiality of Smith and the other jurors.

The *Travis* exception also is inapplicable in this case. Appellant does not allege that either Smith or Brake independently gathered evidence outside the courtroom. Rather, Appellant argues only that Smith engaged in premature deliberations, and

---

4. In *Williams*, we concluded that, on proper objection, a juror is precluded from testifying that another juror told the first juror that the other juror independently gathered evidence outside the courtroom because that testimony would be inadmissible hearsay since its only relevance would be to prove the truth of the matter asserted—i.e., that the other juror gathered evidence outside the courtroom. *Williams*, 114 S.W.3d at 367, 369 n. 9. We also noted but did not decide the question of whether *Travis* authorizes a juror to testify about the juror's own conduct outside the courtroom over the proper objection of the party seeking to preserve the jury's verdict. *Id.* at 366–67. Though Respondent properly objected in this case to the juror affidavits presented by Appellant, it is not necessary to answer now the question we left undecided in *Williams* because Appellant did not present the affidavit or testimony of either Smith or Brake, and because, as explained later in this opinion, Appellant does not allege that either Smith or Brake independently gathered evidence outside the courtroom.

that Smith and Brake made statements during deliberations that were drawn from their prior employment experience (in the case of Brake, prior employment with Respondent).

As a result, the evidence Appellant sought to present to establish the jury misconduct alleged is subject to the general rule that a juror's testimony or affidavit may not be used to impeach the jury's verdict. Jurors' testimony post-verdict is not admissible to show alleged premature deliberations by a juror. *Buckhanan*, 985 S.W.2d at 875. In *Williams*, we concluded juror testimony was not admissible under the general rule to show a juror allegedly told other jurors during deliberations that the defendant would lose his malpractice insurance and license to practice as a physician if he lost the case, which information may have affected juror deliberations and was based on the juror's purported personal knowledge and was outside the evidence presented at trial. We did so for the reason these statements consisted of matters inherent in the verdict. We also noted that improper motives, reasoning, beliefs or mental operations are matters inherent in the verdict. *Williams*, 114 S.W.3d at 368 n. 7, 369. Finally, our Supreme Court concluded jurors' testimony was not admissible to show a juror allegedly told other jurors of his personal knowledge of the event at issue in the trial. *Cook v. Kansas City*, 358 Mo. 296, 214 S.W.2d 430, 433–34 (1948).[5]

The trial court did not abuse its discretion in overruling, without an evidentiary hearing, Appellant's motion for new trial

on the basis of the jury misconduct Appellant alleges because there was no allegation of conduct supporting a finding of jury misconduct. Appellant's third point is denied.

### Point IV

In Appellant's fourth point, he claims the trial court erred in denying his motion for a new trial because the verdict represents a miscarriage of justice under the totality of the circumstances. Beyond a cursory statement the verdict was "against the weight of the evidence, as stated above,"[6] a restatement in cursory fashion of the errors alleged in his first three points, and a cursory statement that "[u]nder the totality of these circumstances, this trial did not meet the basic requirements of due process which call for a fair trial in a fair tribunal," Appellant wholly fails to develop this point with facts, relevant authority or argument. The point presents nothing for review and is denied. *See Giles v. Riverside Transport, Inc.*, 266 S.W.3d 290, 297–98, 300 (Mo.App. W.D. 2008); *Kent v. Charlie Chicken, II, Inc.*, 972 S.W.2d 513, 516 (Mo.App. E.D.1998); *see also Rogers v. Hester ex rel. Mills*, 334 S.W.3d 528, 539 (Mo.App. S.D.2010).[7]

The judgment is affirmed.

SCOTT, C.J., BATES, J., concur.

---

5. We also note that, in general, jurors are "entitled to use their own experience and to draw on the common experience of mankind" in forming their judgments, *Christie v. Gas Service Co.*, 347 S.W.2d 135, 144 (Mo.1961), and are "encouraged to voice their common knowledge and beliefs during deliberations."

*Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 90 (Mo. banc.2010).

6. Appellant makes this same assertion in his reply brief.

7. Although we are uncertain of the exact contours of Appellant's intended argument under

this point, we note that a trial court's denial of a motion for new trial on the ground the jury's verdict was against the weight of the evidence is conclusive and cannot be overturned on appeal. *Giles*, 266 S.W.3d at 300.