**Samuel L. MOORE, Plaintiff/Appellant,**

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Defendant/Respondent.**

**No. ED 105100**

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

Filed: September 5, 2017

**218**

Andrea D. McNairy, Steven W. Duke, One Metropolitan Square, 211 N. Broadway, Suite 1600, St. Louis, MO 63102, For Plaintiff/Appellant.

Kim R. Reid, 1590 Woodlake Drive, Chesterfield, MO 63017, For Defendant/Respondent.

SHERRI B. SULLIVAN, J.

### Introduction

Samuel L. Moore (Appellant) appeals from the judgment of the trial court entered upon a jury verdict in favor of the Missouri Highway and Transportation Commission (Respondent). We affirm.

### Factual and Procedural Background

On September 27, 2013, Appellant was travelling westbound on Martin Luther King Drive (MLK) when he collided with a car driven by Candice Malloyd (Malloyd), traveling northbound on Jefferson Street (Jefferson). The collision occurred within the intersection of MLK and Jefferson and caused Appellant's vehicle to hit the vehicle of William Van Cotton (Van Cotton), stopped southbound at the intersection. Both Appellant and Malloyd maintained they had a green light at the time of the collision. Malloyd testified she was driving approximately 50 miles per hour as she saw Appellant approach the intersection, but thought he was going to stop since she had a green light.

Appellant's claim against Respondent, which is responsible for the maintenance and repair of the subject intersection and traffic signal, alleges the traffic signal at the intersection malfunctioned by simultaneously displaying green lights in both the westbound and northbound directions.

During the discovery phase, Appellant submitted nine sets of interrogatories and requests for production to Respondent seeking information relating to the maintenance and operation of the subject traffic signal. Less than one week before the start of trial, Respondent produced a large number of previously unseen reports of maintenance and repairs of traffic signals done between 2008 and 2012. Appellant filed a motion for sanctions which included a request to strike certain late or unproduced exhibits. Respondent conceded the late production of the discovery and in exchange for a withdrawal of the motion for sanctions, Respondent agreed not to object to any line of questioning as to the veracity of the documents.

On Monday, July 11, 2016, trial began with *voir dire*. Counsel for Appellant queried the jury panel by asking them, "Who here feels sometimes things just happen, and that no one should be responsible if a car loses control, leaves a roadway, is in a crash with another car? Does anybody here have a mindset that things just happen?" Five panel members indicated generally they would have difficulty blaming Respondent or any other entity for a malfunctioning product. One panel member stated "if there's a technological malfunction I have trouble discerning that it's the State's fault." Another said, "I can't envision a company making a stop light that would allow two red, two greens at the same time." Appellant's counsel inquired if anyone else felt the same way. Juror No. 199 responded, "I'm not sure I would know who to blame for something like that."

Juror No. 75 stated, "I would also think that the safety light feature would have some sort of a safety where ... you can't have two green lights at the same time."

At this point, the trial court asked the responding panel members to stand and asked them:

Regardless of how you feel how these kinds of conflicts ought to be judged, are you willing to set that aside and make a decision exclusively on the instructions I give you and the evidence that I let in? Are you able to do that? And if you're not, raise your hand. Let the record reflect that no hand has been raised.

The trial court then told counsel to move on to her next subject of inquiry.

After *voir dire*, counsel met with the court to discuss jury selection. At that time, Appellant made three strikes for cause, all granted by the court: Juror No. 163; Juror No. 467; and Juror No. 345. Appellant did not mention or move to strike either Juror No. 75 or Juror No. 199.

At trial, Appellant presented two witnesses, each of whom said they saw the northwest traffic pole assembly display green in two different directions on one light pole at various times following the accident. Appellant also called Michelle Voegele (Voegele), Area Engineer for the City of St. Louis and Respondent's corporate designee. Appellant questioned Voegele on the issue of Respondent's late production of certain discovery materials involving maintenance and repair records of signals and lighting in the City of St. Louis. Respondent made no objections to this line of questioning and the trial court did not intercede.

Respondent called electrician James Collier (Collier), another corporate designee, who managed the repair and maintenance of signals and lighting in the St. Louis area for the Missouri Department of Transportation (MoDOT). Through its direct examination of Collier, Respondent attempted to rebut the inference of deliberate discovery violations Appellant had raised in its questioning of Voegele. Appellant, on cross-examination of Collier, again raised the late discovery issue. Specifically, the following ensued:

Appellant: There was some talk about the documents earlier that were given to us and why certain documents weren't given to us.

The Court: Don't inquire. Next subject.

Appellant: I'm sorry?

The Court: I said do not inquire on that. Go to the next subject.

Appellant: Okay. May I approach, Your Honor?

The Court: No.

Following Collier's testimony, the trial court admonished the jury, stating:

The discussion about before trial when the documents were or were not delivered or were or were not turned over, that is struck from the record. Give it no weight or consideration in your deliberations.

None of Appellant's evidence regarding the traffic signal operation, nor his examination of Voegele or Collier, was limited beyond the discovery matters.

Later out of the hearing of the jury, the trial court specifically told counsel:

There's absolutely nothing the jury can do with who delivered what at what time or whether or not—that's meaningless. All that counts is the relevance of the exhibit to an issue before the jury. Pretrial discovery conflicts are for the court not the jury.

Appellant did not object or make a record of its opposition to the trial court's

ruling limiting Appellant's cross-examination of Collier regarding pretrial discovery issues at any time.

After the jury returned its verdict in favor of Respondent, Appellant filed a motion for new trial, in which he first mentions his objections to the trial court's actions during *voir dire* and during his cross-examination of Collier regarding pretrial discovery issues. The trial court denied the motion for new trial. This appeal follows.

## Points on Appeal

In his first point, Appellant maintains the trial court erred in disallowing him to pursue a line of questioning during *voir dire* and in *sua sponte* rehabilitating venire panel members who had already responded, because the line of questioning was necessary to probe venire panel member bias and the rehabilitation was insufficient to counteract expressions of prejudice, in that panel members who expressed potential bias were permitted to remain as jurors, thereby prejudicing Appellant.

In his second point, Appellant claims the trial court erred in disallowing him to cross-examine Collier about the late disclosure of documents during discovery because parties to a case have an unequivocal right to cross-examine an adverse party on the entirety of the case, in that members of the jury were deprived of hearing testimony which could support Appellant's burden of demonstrating Respondent had notice of the defect giving rise to the claim.

## Standards of Review

"[A] trial court necessarily and properly has considerable discretion in *control and conduct of voir dire examination,* and an appellate court will differ or interfere with the exercise of that discretion only when the record shows a manifest abuse of discretion *and* a real proba-

bility of injury to the complaining party." Joy v. Morrison, 254 S.W.3d 885, 888 (Mo. banc 2008) (emphasis in original). "However, the *determination of the juror's qualifications* is a matter for the trial court in the exercise of sound judicial discretion, and an appellate court will reject the trial court's determination only upon a clear showing of abuse of discretion." Id. (emphasis in original).

The standard of review for *preserved* error in cross-examination is that of an abuse of discretion. State v. Goodwin, 43 S.W.3d 805, 817 (Mo. banc 2001). The extent and scope of cross-examination in a civil action is within the discretion of the trial court, and the trial court's discretion on such matters will not be disturbed unless an abuse of discretion is clearly shown. Rodriguez v. Suzuki Motor Corp., 996 S.W.2d 47, 60 (Mo. banc 1999); Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 869 (Mo. banc 1993). A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. State v. Johns, 34 S.W.3d 93, 111 (Mo. banc 2000).

The failure to raise alleged errors during trial renders them unpreserved for our review. Riggs v. State Department of Social Services, 473 S.W.3d 177, 186 (Mo. App. W.D. 2015). Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted. State v. White, 247 S.W.3d 557, 561 (Mo. App. E.D. 2007). The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. Id. In determining

whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a plain error, which resulted in manifest injustice or a miscarriage of justice. Id. Plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections. Reed v. Kansas City Missouri School District, 504 S.W.3d 235, 246 (Mo. App. W.D. 2016).

## Discussion

### Point I—Voir Dire

Appellant maintains the trial court erred in curtailing his *voir dire* questioning about whether or not mechanical devices malfunction for a reason and in *sua sponte* rehabilitating venire panel members who had already responded.

We note at the outset Appellant did not preserve in the record his allegation the trial court was acting in error in interrupting his line of *voir dire* questioning or in rehabilitating the jury. Nor did Appellant ask to record the juror numbers of those who stood. More specifically, Appellant did not challenge either Juror No. 75 or Juror No. 199 for cause on any ground and first raised his current claim of error in seating them as jurors in his motion for new trial. Claimed error that is waived is not subject to review on appeal. State v. Johnson, 284 S.W.3d 561, 582 (Mo. banc 2009).

Furthermore, a party who is aware of information affecting a potential juror's qualification to serve as a juror must challenge the potential juror before the person is sworn as a juror, or the party waives any objection to the juror on the basis of that information and cannot assert the objection in a motion for new

trial following an adverse verdict. Ledure v. BNSF Ry. Co., 351 S.W.3d 13, 21 (Mo. App. S.D. 2011). The reason for the rule is that a party is not permitted to speculate by withholding objection to a potential juror until the party sees whether the verdict is favorable or unfavorable. Id. The trial court, in its order denying Appellant's motion for new trial, noted the pitfalls of this possibility as follows:

... Plaintiff in this case did not later move to strike the jurors in question. This problem could have been corrected if Plaintiff had properly moved to strike the jurors following *voir dire*. Instead, Plaintiff waited until after a verdict was entered against him to bring up this argument. Should the law allow or require a new trial under these circumstances the temptation for attorneys to "sandbag" a trial judge by withholding a significant objection then asserting it on a new trial motion would be great.

Of further significance is that none of the panel members in this case expressed any sort of bias toward the parties in this case. In fact, their responses and discussion merely had to do with an abstract notion of the possibility of mechanical objects malfunctioning out of the blue.

Finally, the trial court sufficiently rehabilitated the jurors in its questioning them as to whether they could confine their decisions to the evidence presented to them and the instructions given to them. All jurors unequivocally agreed they could. Appellant was not prejudiced.

For the foregoing reasons, Appellant's claim has no merit. Point I is denied.

### Point II—Cross-Examination

Appellant claims the trial court erred in halting his cross-examination of Collier, the MoDOT electrician, about the timeliness of Respondent's disclosure of

significant discovery documents. As Collier testified, counsel for Appellant cross-examined him as follows:

Q. Earlier you talked about the failure of conflict monitors. Do you remember a previous deposition you gave?

A. Yes, I do.

Q. In that deposition you testified that you would estimate the failure rate to be about 5 percent. Do you remember that testimony?

A. I'm not sure what the value I gave but it would be a very low percentage, yes.

Q. Do you want me to show you or do you accept that you said 5 percent?

A. I'll accept that.

Q. And some of the reasons you said conflict monitors could fail included electrical surges, power, lightning, water, and, verbatim, a lot of variables that can cause the failure; is that correct?

A. Correct.

Q. There was some talk about the documents earlier that were given to us and why certain documents weren't given to us.

THE COURT: Don't inquire. Next subject.

[Appellant]: I'm sorry?

THE COURT: I said do not inquire on that. Go to the next subject.

[Appellant]: Okay. May I approach, Your Honor?

THE COURT: No.

At this point, counsel for Appellant should have made an offer of proof. The rationale for requiring offers of proof to be made is to preserve error when a trial court erroneously sustains an objection to proffered evidence. Great American Acceptance Corp. v. Zwego, 902 S.W.2d 859, 865 (Mo. App. W.D. 1995). The court had made its ruling, and just as if it had sustained an objection from the opposing side, Appellant's counsel needed to make her offer of proof at this point. She did not. Instead, she merely proceeded with her cross-examination, making no move whatsoever to preserve her objection to the trial court's action.

Even if it appears the trial court has closed the door on the subject, it is incumbent upon counsel to heed the advice given in Great American Acceptance Corp., 902 S.W.2d at 864-65 (quotations and citations omitted):

When an objection is sustained to the proffered evidence, the offering party must show its relevancy and materiality by way of an offer of proof in order preserve the issue for appellate review. The offer of proof must show what evidence will be given, the purpose and object of the evidence sought to be introduced, and all of the facts necessary to establish the admissibility of the evidence in sufficient detail to demonstrate its relevancy and materiality. Appellant failed to preserve this for appeal.

Appellant maintains he is entitled to cross-examine an adverse party on the *entirety* of the case. The trial court found otherwise, in that discovery matters are completely irrelevant to the issues before the jury. Later, the trial court stated for the record outside of the hearing of the jury:

THE COURT: There's absolutely nothing the jury can do with who delivered what at what time or whether or not—that, that's meaningless. All that counts is the relevance of the exhibit to an issue before the jury. Pretrial discovery conflicts are for the Court. Not the jury. So those kinds of arguments and debates were improper and that's why I totally struck it. Do counselors understand? Counsel for the plaintiff, do you understand that?

[Appellant]: I do, Your Honor.

THE COURT: Counsel for the defendant, do you understand that?

[Respondent]: Yes, sir, I do.

As is indicated, Appellant signified his understanding and agreement with the trial court's ruling and made no objection or offer of proof, eschewing this rare second opportunity to preserve the matter for our review.

Appellant is amiss in his claim that late production of repair documents supports his claim of faulty maintenance of the traffic signal itself. It is what is *within* the repair and maintenance records that will establish his case. Whether the records are turned over in a timely fashion has no bearing on their contents and what they will prove. Appellant was not precluded from questioning the electrician about repairs and maintenance made or not made to the traffic signal using the content of the records detailing same. The trial court did not abuse its discretion in limiting Appellant's cross-examination of Collier about the late turnover of discovery documents, which had no relevance to the issues before the jury to decide. Rodriguez, 996 S.W.2d at 60.

 We note again that Appellant did not object or make a record during trial to preserve this issue for appeal, and therefore this point merits, if any, plain error review. The failure to raise alleged errors during trial renders them unpreserved for our review. Riggs, 473 S.W.3d at 186. Plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections. Reed, 504 S.W.3d at 246. We have already determined there was no abuse of discretion creating prejudice on the trial court's part in curtailing Appellant's cross-examination of the electrician, in that Appellant's line of questioning was irrelevant and designed to elicit irrelevant and possibly prejudicial information if the jury inferred mechanical malfunction liability based on discovery misbehavior. As such, there was no plain error either, a much lower standard of review necessitating a manifest injustice or a miscarriage of justice. There was no such injustice here. Point II is denied.

## Conclusion

The judgment of the trial court is affirmed.

Robert G. Dowd, Jr., P.J., and Kurt S. Odenwald, J., concur.